E-FILED
Monday, 29 September, 2025  04:51:57 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| NICOLE C. WATERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 24-CV-2163 |
| | ) | |
| JANE McFADDEN, as Coroner of | ) | |
| Vermilion County, Illinois, and | ) | |
| VERMILION COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff, Nicole C. Waterman, filed a Complaint (#1-1) in the Circuit Court for the Fifth Judicial Circuit, Vermilion County, Illinois, against Defendants, Jane McFadden, as Coroner of Vermilion County, Illinois, and Vermilion County ("the County"), alleging they violated her right to procedural due process under the U.S. Constitution.  Defendants removed (#1) the case to this court on July 17, 2024.  Defendants filed a Motion to Dismiss (#5) on July 23, 2024, to which Plaintiff filed a Response (#9) on August 27, 2024.

## BACKGROUND

The following background is taken from the allegations in Plaintiff's Complaint.  At this stage of the proceedings, the court must accept as true all material allegations of Plaintiff's Complaint, drawing all reasonable inferences therefrom in Plaintiff's favor.  See *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).[1]

---

[1]This factual background also includes the County's Personnel Policy ("the Policy") and Plaintiff's swearing-in oath, both of which Plaintiff relies on and references in support of her Complaint.  Those documents' contents therefore become part of the

*Factual Allegations*

On December 1, 2013, Plaintiff was hired by the County and the Vermilion County Coroner, Peggy Johnson, to be the County's Deputy Coroner. As Deputy Coroner, Plaintiff took an oath pursuant to 55 Ill. Comp. Stat. 5/3-3041, which requires that "Each deputy shall, before entering upon the duties of his office take and subscribe an oath or affirmation[.]" The official oath taken and subscribed to by Plaintiff states that she would support the Constitution of the United States and the Constitution of the State of Illinois, and that she would faithfully discharge the duties of Deputy Coroner to the best of her ability.

Section 1.1 of the Policy states, in bold print, "This is not intended to create a contract of employment but is a policy and information guide to guide employees." In addition, Section 10.5 of the Policy states, in part, that "Vermilion County has historically offered its employees steady, long-term employment." Section 13.1 of the Policy states: "Good relations with coworkers, with other departments and offices of the County and with other public agencies are essential. Failure to maintain appropriate work standards and behavior can result in disciplinary action or termination of employment." Section 13.2 of the Policy provides for a system of progressive discipline.

Section 13.2.4 of the Policy goes on to state: "Please note, unless you are a part of a bargaining unit that has a labor contract requiring just cause for termination, you are an at-will employee, and nothing in this policy manual or this particular policy shall constitute a contract requiring certain action be taken before termination, including any

---

Complaint and may be considered by the court without turning Defendants' Motion to Dismiss into a motion for summary judgment. See *Williamson v. Curran*, 714 F.3d 432, 442-43 (7th Cir. 2013).

step-by-step or progressive disciplinary procedure or any requirement to classify your termination.  Your department head/officeholder has the right to terminate your employment at any time and for any lawful reason with or without rendering counseling, warnings, or any other forms of discipline.  Likewise, you may terminate your employment with Vermilion County at any time and for any reason."

McFadden became County Coroner in 2016.  At all times while employed by Defendants, Plaintiff performed her work in an exemplary manner, meeting or exceeding all job expectations.  On June 30, 2022, Defendants terminated Plaintiff's employment without warning, reason, explanation, or any form of progressive discipline or hearing.

*Plaintiff's Claims*

Plaintiff's Complaint contains two counts against Defendants.  Count I is against McFadden, and Count II is against the County.  However, both counts contain identical allegations pertaining to procedural due process.

Plaintiff alleges that she has a constitutional right to a hearing before being defamed as part of a discharge, or at a minimum to a name-clearing hearing after the discharge.  Plaintiff further alleges that Defendants defamed her and impugned her reputation and character by terminating her employment without warning, reason, explanation, or any form of progressive discipline or hearing.

Specifically, Plaintiff alleges the termination of employment "tacitly" sent the message to her coworkers, the public at large, and any future potential employer that she: (1) failed to uphold her official oath; (2) failed to support the Illinois and U.S. Constitutions; (3) failed to faithfully discharge her duties as Deputy Coroner to the best

3

of her ability; (4) committed some form of malfeasance or dereliction of duty to such a significant degree that progressive discipline would not have been warranted; and/or (5) committed some form of malfeasance or dereliction of duty to such a significant degree that termination of employment was warranted.

Plaintiff alleges that Defendants' termination of her employment without warning, reason, explanation, or any form of progressive discipline or hearing violated her constitutionally guaranteed due process rights.  As a result, Plaintiff claims she has suffered damages in the form of lost income, damage to her reputation and character, humiliation, and impaired her ability to obtain future employment.

ANALYSIS

In support of their Motion to Dismiss, Defendants argue that Plaintiff has no federal due process claim because she had no property right to continued employment. Second, Defendants argue that Plaintiff has no "occupational liberty interest" claim because she had no right to a name-clearing hearing.

Plaintiff responds that her position of Deputy Coroner was created by Illinois statute, and the "statutory requirement that a Deputy Coroner's appointment be in writing signed by the Coroner is akin to the creation of a contract.  At least it implies a contract."  Plaintiff also argues that she has an occupational liberty claim because Defendants' summary termination of her employment without a hearing "was a clear statement to the public and her coworkers that she either violated her oath of office or failed to maintain appropriate work standards or behavior."

4

*Federal Rule of Civil Procedure 12(b)(6) Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) allows for dismissal of a pleading if it fails "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "Dismissal for failure to state a claim under Rule 12(b)(6) is proper 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  "[T]he complaint must contain allegations that 'state a claim to relief that is plausible on its face' or it is subject to dismissal under Rule 12(b)(6)."  *Virnich*, 664 F.3d at 212, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  The complaint's factual allegations must be enough to raise a right to relief above the speculative level, meaning the complaint must contain allegations plausibly suggesting, not merely consistent with, an entitlement to relief.  *Virnich*, 664 F.3d at 212.  "A claim has facial plausibility when the plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Virnich*, 664 F.3d at 212, quoting *Iqbal*, 556 U.S. at 678.

While the court must, in reviewing a plaintiff's claim, accept the well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor, the court is not bound to accept legal conclusions as true, and conclusory allegations merely reciting the elements of the claim are similarly not entitled to the presumption of truth.  *Burger v. County of Macon*, 942 F.3d 372, 374 (7th Cir. 2019); *Virnich*, 664 F.3d at 212.

*Procedural Due Process*

Plaintiff makes two separate procedural due process claims: (1) that she was deprived of her employment without sufficient due process; and (2) that she was deprived of her occupational liberty interest due process rights.

<u>Property Interest</u>

Defendants first argue that Plaintiff had no property interest in her continued employment with the County because she was an "at-will" employee. Because Plaintiff never had an employment contract with the County or a right to continued employment under Illinois statutory law, she had no property interest and thus was not entitled to due process protections. Plaintiff responds that because her office was created by statute, and her appointment was in writing and signed by the Coroner, it was "akin" to the creation of a contract, or at least an implied contract.

"Property interests are not inherent in the Constitution; '[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Cheli v. Taylorville Community School District*, 986 F.3d 1035, 1039 (7th Cir. 2021), quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The court must therefore determine whether Plaintiff had a protected property interest in her employment with reference to Illinois law, the law of the state where she was employed. See *Cheli*, 986 F.3d at 1039.

"Under Illinois law, a person has a property interest in his job only where he has a legitimate expectation of continued employment based on a legitimate claim of entitlement." *Cheli*, 986 F.3d at 1039. "Accordingly, to show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, state law, contract or

understanding limiting the ability of the state or state entity to discharge him." *Cheli*, 986 F.3d at 1039 (cleaned up). "Illinois law presumes 'an employment relationship without a fixed duration is terminable at will.'" *Cheli*, 986 F.3d at 1039, quoting *Duldulao v. Saint Mary of Nazareth Hospital Center*, 505 N.E.2d 314, 317-18 (Ill. 1987). "However, that presumption 'can be overcome by demonstrating that the parties contracted otherwise.'" *Cheli*, 986 F.3d at 1039, quoting *Duldulao*, 505 N.E.2d at 318. Property interests in employment may be created by express or implied contracts. *Cheli*, 986 F.3d at 1039.

The court agrees with Defendants that the Policy does not create an employment contract that provides Plaintiff with an interest in her continued employment with the County. This court addressed a nearly identical claim in an earlier case involving Vermilion County, *Bogart v. Marron*, 2016 WL 11689575 (C.D. Ill. Dec. 12, 2016). In *Bogart*, the plaintiff noted that the employee handbook (an earlier, but substantially and relevantly similar version of the Policy in effect in this case) provided termination only "for cause" of County employees and that the post-termination grievance procedure the County had to provide her was not followed.

The court began its analysis by noting that, "[i]n Illinois, employment relationships are presumed to be at will, and thus establishing an expectation of continued employment requires a clear statement made in some substantive state-law predicate creating that interest." *Bogart*, 2016 WL 11689575, at *8, citing *Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013). "Promises made in an employee handbook may give rise to a legitimate claim of entitlement sufficient to be protected as a property interest, but such a promise will only create an enforceable right if the

7

traditional requirements for contract formation are present, the first of which is that the promise must be clear enough that an employee would reasonably believe that an offer has been made." *Bogart*, 2016 WL 11689575, at *8, citing *Cromwell*, 713 F.3d at 364. "The promise cannot be a mere procedural guarantee, but rather substantive criteria limiting the state's discretion is required in order for a property interest to be created and, generally, the terms of employment must provide that termination will *only* be for cause or otherwise evince mutually explicit understandings of continued employment." *Bogart*, 2016 WL 11689575, at *8, citing *Cromwell*, 713 F.3d at 364 (emphasis in original).

The court noted that the handbook contained a disclaimer identical to the one in the Policy at issue in the instant case, in bold lettering, on page 1 declaring "'[t]his is not intended to create a contract of employment but is a policy and information guide to employees.'" *Bogart*, 2016 WL 11689575, at *8. "Such a disclaimer, the Seventh Circuit has held, undercuts any claim that promises in an employee policy handbook have legal status." *Bogart*, 2016 WL 11689575, at *8, citing *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1348 (7th Cir. 1995). In any event, the court held, "the promises made in the Vermilion County policy handbook do not create a property interest." *Bogart*, 2016 WL 11689575, at *8. The court cited to Section 13.02.06, which stated: "'A department head/officeholder may terminate an employee. Cause[s] for immediate termination *include but are not limited to* gross misconduct, negligence, inefficiency, insubordination, unauthorized absence, conviction of a criminal offense, falsification of records, use of a position for personal advantage, or other justifiable reasons where alternative personnel actions are not appropriate.'" *Bogart*, 2016 WL 11689575, at *8 (emphasis added by *Bogart* court).

8

The court went on to state that the plaintiff had "pointed to no regulation or Vermilion County policy explicitly stating that an employee can be fired only for cause[,]" and that, "[r]ather, all the language involving 'cause' is in the permissive, 'may' or cause for immediate termination 'includ[ing] but not limited to,' as opposed to the more mandatory 'shall' or 'only.'" *Bogart*, 2016 WL 11689575, at *9. The court found that such language is suggestive as opposed to mandatory, and neither guarantees progressive discipline nor requires "just cause" as a basis for dismissal. *Bogart*, 2016 WL 11689575, at *9, citing *Boulay v. Impell Corp.*, 939 F.2d 480, 482-83 (7th Cir. 1991). The court further found that the language in the regulations stating that an employee "may be" terminated and that cause for termination included, but was not limited to, certain enumerated reasons, was not a sufficiently clear statement that she could be fired only for cause so as to give the plaintiff a protected property interest in her employment with Vermilion County. *Bogart*, 2016 WL 11689575, at *9, citing *Redd v. Nolan*, 663 F.3d 287, 298 (7th Cir. 2011). Although the plaintiff could be terminated for cause, she could also be terminated for any other reason, and a "non-exhaustive list of bases for discipline or termination reads more as a procedural guideline for county department head/officeholders to facilitate consistent termination procedures county-wide, but does not provide [the p]laintiff with a legitimate claim of entitlement to continued employment." *Bogart*, 2016 WL 11689575, at *9, citing *Kvapil v. Chippewa County, Wis.*, 752 F.3d 708, 714-15 (7th Cir. 2014). The court concluded that "[s]uch permissive language, in conjunction with the unambiguous disclaimer that was not buried or

9

otherwise hidden, is not sufficient to create a protected property interest in continuing employment." *Bogart*, 2016 WL 11689575, at *9, citing *Moss v. Martin*, 473 F.3d 694, 701 (7th Cir. 2007).

The court also found that the plaintiff could not rely on the procedural provisions of the County's personnel policy, which described how the termination appeal procedure should be handled, "because it is well established that such procedural protections under state law do not provide the substantive restrictions on the employer's discretion that would be needed to establish a federally protected property interest in continued employment." *Bogart*, 2016 WL 11689575, at *9, citing *Redd*, 663 F.3d at 298, and *Moss*, 473 F.3d at 701.

In the instant case, the Policy contains Section 13.2.4, which explicitly states: "Please note, unless you are a part of a bargaining unit that has a labor contract requiring just cause for termination, *you are an at-will employee*, and nothing in this policy manual or this particular policy shall constitute a contract requiring certain action be taken before termination, including any step-by-step or progressive disciplinary procedure or any requirement to classify your termination. *Your department head/officeholder has the right to terminate your employment at any time and for any lawful reason with or without rendering counseling, warnings, or any other forms of discipline*. Likewise, you may terminate your employment with Vermilion County at any time and for any reason." (emphases added). The Policy, even more clearly than the one at issue in *Bogart*, does not create a right to continued employment for Plaintiff. Notably,

10

Plaintiff does not cite to any Policy provision in her Response as a basis for her claim, and the court can presume that she has abandoned any reliance on the Policy for the existence of a property interest in her employment with the County.

Rather, Plaintiff cites to Illinois statutes, and the existence of an implied contract from said statutes, for her property interest. Plaintiff cites to the following statutes:

> Appointment of deputies. Each coroner may appoint one or more deputies as the coroner, in his or her sole discretion, determines necessary and appropriate, subject to county board appropriations. The appointment shall be in writing and signed by the coroner. A deputy's compensation shall be determined by the county board.

55 Ill. Comp. Stat. 5/3-3040.

> Oath of deputies. Each deputy shall, before entering upon the duties of his office take and subscribe an oath or affirmation, in like form as required of coroners, which shall be filed in the office of the county clerk.

55 Ill. Comp. Stat. 5/3-3041.

> Duties of deputies. Deputy coroners, duly appointed and qualified, may perform any and all of the duties of the coroner in the name of the coroner, and the acts of such deputies shall be held to be acts of the coroner.

55 Ill. Comp. Stat. 5/3-3042.

> Oath. He shall also, before entering upon the duties of his office, take and subscribe the oath or affirmation prescribed by Section 3, article XIII of the Constitution which shall be filed in the office of the county clerk of his county.

55 Ill. Comp. Stat. 5/3-3005.

11

> Conservator of the peace.  Each coroner shall be conservator of the peace in his county, and, in the performance of his duties as such, shall have the same powers as the sheriff.

55 Ill. Comp. Stat. 5/3-3007.

> Alteration of duties, powers and functions of county officers.  No county board may alter the duties, powers and functions of county officers that are specifically imposed by law.  A county board may alter any other duties, powers or functions or impose additional duties, powers and functions upon county officers.  In the event of a conflict State law prevails over county ordinance.

55 Ill. Comp. Stat. 5/5-1087.

The above cited statutes clearly create the position of Deputy Coroner, and lay out the basics for the Deputy Coroner's process of appointment and duties.  However, the statutes are completely *silent* as to termination.  Plaintiff "must show that she had a legitimate expectation of continued employment by pointing to *specific statutory or contractual language that limits the discretion* of [Defendants] to discharge her."  See *Casna v. City of Loves Park*, 574 F.3d 420, 424 (7th Cir. 2009) (emphasis added).  She cannot do so.  Indeed, the statutes, while providing for the Coroner, in her sole discretion, to appoint deputies as she feels necessary (subject to County Board appropriations), say nothing about termination, let alone contain specific language limiting Defendants' discretion in terminating Plaintiff's employment.

Plaintiff, however, argues that an employment contract, even if not expressly stated in the statutes, can be implied.  In support, Plaintiff cites to the U.S. Supreme Court's decision in *Perry v. Sindermann*, 408 U.S. 593 (1972), wherein a teacher was employed in a state college system for ten years, the last four as a junior college

12

professor under a series of one-year written contracts.  The state Regents declined to renew his employment for the next year, without giving him an explanation or prior hearing.

The teacher (referred to as "the respondent" in the Court's opinion) alleged that his property interest, though not secured by a formal contractual tenure provision, was secured by a no less binding understanding fostered by the college administration.  In particular, he alleged that the college had a de facto tenure program, and that he had tenure under that program, claiming that he and others legitimately relied upon an unusual provision that had been in the college's official Faculty Guide for many years: "Teacher Tenure: Odessa College has no tenure system.  The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work."  *Perry*, 408 U.S. at 600.

Moreover, the respondent "claimed legitimate reliance upon guidelines promulgated by the Coordinating Board of the Texas College and University System that provided that a person, like himself, who had been employed as a teacher in the state college and university system for seven years or more has some form of job tenure."  *Perry*, 408 U.S. at 600.  "Thus, the respondent offered to prove that a teacher with his long period of service at this particular State College had no less a 'property' interest in continued employment than a formally tenured teacher at other colleges, and had no less a procedural due process right to a statement of reasons and a hearing before college officials upon their decision not to retain him."  *Perry*, 408 U.S. at 601.

13

In analyzing the respondent's claim, the Court stated "that 'property' interests subject to procedural due process protection are not limited by a few rigid, technical forms.  Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.'"  *Perry*, 408 U.S. at 601.  The Court went on to say that "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are *such rules or mutually explicit understandings* that support his claim of entitlement to the benefit and that he may invoke at a hearing."  *Perry*, 408 U.S. at 601 (emphasis added).

The Court noted that, while a "written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to continued employment unless sufficient 'cause' is shown[,]" the "absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a 'property' interest in reemployment."  *Perry*, 408 U.S. at 601.  "For example, the law of contracts in most, if not all, jurisdictions long has employed a process by which agreements, though not formalized in writing, may be 'implied.'  Explicit contractual provisions may be supplemented by other agreements implied from the promisor's words and conduct in the light of the surrounding circumstances.  And, the meaning of (the promisor's) words and acts is found by relating them to the usage of the past."  *Perry*, 408 U.S. at 601-02 (cleaned up).

The Court reasoned that a "teacher, like the respondent, who has held his position for a number of years, might be able to show from the circumstances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure.  Just as this Court has found there to be a 'common law of a particular

14

industry or of a particular plant' that may supplement a collective-bargaining agreement, so there may be an unwritten 'common law' in a particular university that certain employees shall have the equivalent of tenure."  *Perry*, 408 U.S. at 602 (internal citation omitted).  The Court found this to be "particularly likely in a college or university, like Odessa Junior College, that has no explicit tenure system even for senior members of its faculty, but that nonetheless may have created such a system in practice."  *Perry*, 408 U.S. at 602.  The Court concluded that "the respondent has alleged the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent 'sufficient cause.'"  *Perry*, 408 U.S. at 602-03.

Even under *Perry*, however, Plaintiff has not pled the existence of a property interest.  First, while recognizing that the absence of an express written contractual provision limiting Defendants' discretion to terminate Plaintiff does not always foreclose the possibility that Plaintiff has a property interest in her continued employment, she must still allege facts establishing that there are "such rules or mutually explicit understandings" supporting her claim of entitlement to continued employment.  See *Perry*, 408 U.S. at 601.  Plaintiff has not alleged any such rules or mutually explicit understandings.  As stated, the cited statutes themselves are silent on the subject, and she has not alleged any communications, past practices, or actions from Defendants that evinced any understanding on their part to such an entitlement.  Indeed, just the opposite is true, as the Policy explicitly states that it is not intended to create a contract and that an employee like Plaintiff who is not a member of a collective bargaining unit is "at-will."

15

Second, Plaintiff has made no allegation that the County, or municipalities or governmental entities in Illinois in general, are like the higher education systems at issue in *Perry*, that are "particularly likely" to have created a tenure system "in practice" even if they had "no explicit tenure system even for senior members of the faculty." *Perry*, 408 U.S. at 602. The respondent in *Perry* cited to specific examples of a property interest, such as the college's de facto tenure program embodied in the Faculty Guide's provision that the administration wished "the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work[,]" as well as the state educational board's guidelines that provided that a person like the respondent who had been employed as a teacher in the state college and university system for seven years or more has some form of job tenure. *Perry*, 408 U.S. at 600. Plaintiff here has alleged no such comparable examples.

In sum, Plaintiff has pled no allegations that overcome the presumption in Illinois that an employment relationship without a fixed duration, like hers, is terminable at will. See *Cheli*, 986 F.3d at 1039. Thus, Defendants' Motion must be GRANTED as to her claim to a property interest.

<u>Occupational Liberty Interest</u>

Defendants argue that Plaintiff's occupational liberty interest claim, in which she asserts a right to a "name-clearing hearing" before termination, must fail because she does not allege McFadden (or anyone else) made any false statements of fact to the public and because she "has not sufficiently alleged any tangible loss of employment opportunities."

16

Plaintiff responds that she swore an oath, on the public record, in which she promised to support the U.S. and Illinois Constitutions, and to faithfully discharge the duties of her office to the best of her ability.  Plaintiff argues that Defendants' summary termination of her employment without a hearing "was a clear statement to the public and her coworkers that she either violated her oath of office or failed to maintain appropriate work standards or behavior[,]" and thus "she was entitled to a name-clearing hearing prior to termination."

"The concept of liberty protected by the due process clause has long included occupational liberty—the liberty to follow a trade, profession, or other calling." *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015) (cleaned up).  "An aggrieved person can bring an occupational liberty claim against a former public employer when, after an adverse employment action, the employer stigmatizes her by making public comments impugning her good name, honor, or reputation or imposes a stigma that forecloses other employment opportunities within her occupation." *Biggs v. Chicago Board of Education*, 82 F.4th 554, 559 (7th Cir. 2023) (cleaned up).  "To prevail on such a claim, a plaintiff must establish that (1) the defendant made stigmatizing comments about her; (2) those comments were publicly disclosed; and (3) she suffered a tangible loss of other employment opportunities as a result of the public disclosure." *Biggs*, 82 F.4th at 560. Once a plaintiff has proven all the elements of the cause of action, they are entitled to a name-clearing hearing at which they can refute the statements and clear their name. *Strasburger v. Board of Education, Hardin County Community Unit School District No. 1*, 143 F.3d 351, 356 (7th Cir. 1998).

"The first element of an occupational liberty claim 'requires the employee to show that a public official made defamatory statements about him.'" *Galfer v. Chicago Board of Education*, 2025 WL 1918587, at *5 (N.D. Ill. July 11, 2025), quoting *Strasburger*, 143 F.3d at 356. "Stigmatizing statements 'must be false assertions of facts'—'[t]rue but stigmatizing statements that preclude further government employment' and 'statements of opinion' do not support this type of claim." *Galfer*, 2025 WL 1918587, at *5, quoting *Strasburger*, 143 F.3d at 356. Stigmatizing statements are those that place an "individual's good name, reputation, honor or integrity at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism, or subversive acts." *Lashbrook*, 65 F.3d at 1348. "A public stigmatizing statement is one that is distributed 'in a manner which would reach future potential employers of the plaintiff or the community at large.'" *Biggs*, 82 F.4th at 562, quoting *Ratliff v. City of Milwaukee*, 795 F.2d 612, 626-27 (7th Cir. 1986).

Plaintiff has not alleged that any public official has made defamatory statements about her in connection with her termination. See *Strasburger*, 143 F.3d at 356. Indeed, Plaintiff has not alleged that anyone made any statements whatsoever. Rather, Plaintiff contends that Defendants' summary termination of her employment itself constitutes a sufficiently stigmatizing act. A liberty interest can also be infringed when the state "imposes a stigma or other disability on the individual which forecloses other opportunities." *Lashbrook*, 65 F.3d at 1348. "The 'stigma or other disability' type of claim has generally been found where the government imposes a legal barrier to future employment, such as denial of admission to the bar, disqualification from all government employment, or sending adverse information to a professional licensing

18

agency." *Manos v. Board of Education of Villa Grove Community School District #302*, 2017 WL 6371299, at \*9 n.3 (C.D. Ill. Dec. 13, 2017), citing *Adams v. Walker*, 492 F.2d 1003, 1009 (7th Cir. 1974).

Plaintiff has not alleged that Defendants imposed a legal barrier to future employment, disqualified her from all government employment, or sent adverse information to a professional licensing agency. She has only alleged that her termination without warning, reason, explanation or any form progressive disicpline or hearing "defamed" and "impugned her reputation and character." However, "[d]enial of a liberty interest requires more than just being fired." *Lashbrook*, 65 F.3d at 1348. "Any time an employee is involuntarily terminated, some stigma attaches which affects future employment opportunities. This type of harm does not infringe on an employee's liberty interests." *Ratliff*, 795 F.2d at 625. Many public employees take oaths vowing to uphold the constitutions and laws when they are sworn in to their jobs. Plaintiff's theory would make it an infringement of a public employee's liberty interest any time they were fired, whether or not the firing was accompanied by any possibly defamatory statements or stigmatizing barriers to future employment.

Plaintiff, in both her Complaint and Response, cites to the Seventh Circuit's decision in *Breuder v. Board of Trustees of Community College District No. 502*, 888 F.3d 266 (7th Cir. 2018), quoting the following passage:

> The first is that, when discharging Breuder without giving him an opportunity for a hearing, the Board issued a statement declaring that he had committed misconduct. *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), holds that even a person who has no property interest in a public job has a constitutional entitlement to a hearing before being defamed as part of a discharge, or at a minimum to a name-clearing hearing after the discharge. See also *Wisconsin v. Constantineau*, 400 U.S.

433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).  The Board has not offered that
opportunity to Breuder, and the members insist that they need not do so.
The law is clearly established against them.

*Breuder*, 888 F.3d at 270.

Breuder distinguishes itself from the instant case in the very passage Plaintiff

cites.  The termination of the plaintiff in *Breuder*, a college professor, was accompanied

by the defendant's release "of a *statement declaring he had committed misconduct*."

*Breuder*, 888 F.3d at 270 (emphasis added).  The plaintiff in *Breuder* was "defamed as

part of a discharge."  Here, per the Complaint, the only thing accompanying Plaintiff's

termination was silence.  Plaintiff has not sufficiently alleged the first element of an

occupational liberty interest claim.

Further, Plaintiff has not sufficiently alleged the third element: that she suffered a

tangible loss of other employment opportunities as a result of the public disclosure of

her termination.  "An occupational liberty plaintiff faces a high hurdle to show that she

has suffered a tangible loss of employment opportunities from a defendant's public

stigmatizing statements.  Indeed, she must demonstrate that the statements have made

it '*virtually impossible* for her to find new employment' within her occupation."  *Biggs*, 82

F.4th at 560, quoting *Ratliff*, 795 F.2d at 625-26 (emphasis added by *Biggs* court).  "This

standard presents a high bar: Reduced economic returns and diminished prestige are

insufficient to establish an occupational liberty deprivation absent permanent exclusion

from or protracted interruption of employment." *Martin v. Haling*, 94 F.4th 667, 672-73

(7th Cir. 2024). "Mere frustration or delay in getting a new job will not suffice." *Biggs*,

82 F.4th at 560.

The only allegation in Plaintiff's Complaint that comes close to the third element

is that her termination "impaired [her] ability to obtain future employment." However,

the other allegations in her Complaint do not substantiate this conclusory statement

with the kind of factual material that would raise her right to relief above the

speculative level. See *Blackout Sealcoating, Inc. v. Peterson*, 894 F.Supp.2d 1067, 1070

(N.D. Ill. 2012), citing *Twombly*, 550 U.S. at 555 (finding an allegation in support of

occupational liberty interest claim insufficiently conclusory where it alleged the

plaintiffs' debarment "seriously threatens their ability to engage in their chosen

profession").

Nothing in the Complaint suggests that Plaintiff lacks opportunities for pursuing

her vocation with other agencies or governmental bodies. See *Blackout Sealcoating*, 894

F.Supp.2d at 1070. "[A] court should not simply assume, based on a plaintiff's

assertions, that a wide variety of opportunities have been foreclosed." *Townsend v.

Vallas*, 256 F.3d 661, 671 (7th Cir. 2001). Indeed, Plaintiff only alleges that her future

employment opportunities are "impaired." She does not even allege, as she must, that

her termination made it "virtually impossible for her to find new employment within

her occupation." See *Biggs*, 82 F.4th at 560. In short, the sole conclusory, boilerplate

factual allegation in the Complaint is insufficient to support a claim that she became

21

"virtually unemployable" in her chosen field as a result of her termination. See *Blackout Sealcoating*, 894 F.Supp.2d at 1070; *Gamble v. Northeast Illinois Regional Commuter R.R. Corp.*, 1991 WL 281188, at *3 (N.D. Ill. Dec. 31, 1991). Accordingly, Plaintiff has not stated a violation of a constitutional liberty interest, and Defendants' Motion is GRANTED on this claim.

*Dismissal Without Prejudice*

This is Plaintiff's original Complaint. "A plaintiff should ordinarily be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *White v. Illinois State Police*, 15 F.4th 801, 808 (7th Cir. 2021) (cleaned up). "Dismissal without prejudice is the norm, at least when it comes to the plaintiff's original complaint." *White*, 15 F.4th at 808. Therefore, this dismissal is without prejudice. Plaintiff has 21 days from the entry of this Order to file an amended complaint, or this matter will be dismissed with prejudice.

IT IS THEREFORE ORDERED:

(1)    Defendants' Motion to Dismiss (#5) is GRANTED. Plaintiff's Complaint is DISMISSED without prejudice.

(2)    Plaintiff has 21 days from the entry of this Order to file an amended complaint. Plaintiff's failure to file an amended complaint within that time will result in the dismissal of her case with prejudice.

22

(3)     This case is referred to the magistrate judge for further proceedings in

accordance with this Order.

ENTERED this 29th day of September, 2025.

s/ COLIN S. BRUCE
U.S. DISTRICT  JUDGE